842 So.2d 881 (2003)
LRX, INC., d/b/a "Lease Doctors," and Alan Marcus, Appellant/Cross-Appellees,
v.
HORIZON ASSOCIATES JOINT VENTURE, through its joint venturers, HORIZON-ANF, INC., and WWL Holdings, Inc., Appellees/Cross-Appellants.
No. 4D01-672.
District Court of Appeal of Florida, Fourth District.
February 5, 2003.
Rehearing Denied May 7, 2003.
*883 Joel S. Perwin of Podhurst Orseck Josefsburg Eaton Meadow Olin & Perwin, Roy D. Wasson, and Joseph A. Glick, Miami, for appellants/cross-appellees.
Richard A. Sherman of Law Offices of Richard A. Sherman, P.A., and James W. Dawson of Fazio, Dawson, DiSalvo, Cannon, Abers, Podrecca & Fazio, Fort Lauderdale, for Appellee/Cross-appellant-Horizon Associates.
Arthur J. England, Jr. of Greenberg Traurig, P.A., Miami, and Jerold I. Budney of Greenberg Traurig, P.A., Fort Lauderdale, for Appellee/Cross-appellant-WWL Holdings, Inc.
STONE, J.
We reverse a post-trial order that set aside a jury verdict entered in favor of the plaintiffs, LRX, Inc. and Alan Marcus. The order granted Horizon's motion for directed verdict on LRX's claim for libel and awarded a new trial on claims of slander and tortious interference.
LRX conducts a lease auditing business in which it represents tenants under commercial leases and determines whether rent and expense charges are in keeping with the lease terms. An LRX principal, Alan Marcus, was a suspended attorney at the time in question. In 1991, he had pled guilty to a felony count on charges that he embezzled money from settlement funds provided by a client. He was suspended from the practice of law for three years. See The Florida Bar v. Marcus, 616 So.2d 975 (Fla.1993).
LRX represented seven tenants of the landlord, Horizon Associates Joint Venture (Horizon), and determined that Horizon had overcharged them. Marcus sent a report to Horizon demanding payment of *884 the overcharges. Horizon responded with a letter claiming that certain statements in the report constituted the unauthorized practice of law, adding that "your three years suspension for misappropriation of client funds (said sanction imposed in lieu of disbarment due to mitigation factors of cocaine addiction, plea of guilty to felony count, rehabilitation, restitution, and delay in resolving matter), remains in effect." The letter went on to state, "[I] trust that these tenants, whom you refer to as your `clients,' are already aware of your Unconditional Guilty Plea to misappropriating at least $39,000.00 via your having misrepresented to you [sic] insurance company client...."
Horizon delivered copies of the letter and the supreme court opinion to each of the seven tenants. One of the tenants testified that Nelson Fernandez, the person responsible for daily operations at the Horizon building, delivered a copy of the letter. He testified that Fernandez declared he was going to have Marcus disbarred because "he was suspended and he's practicinghe's giving legal advise [sic] and he's practicing law now." Fernandez was going to "make sure he never practices again." The witness added that Fernandez described Marcus as "unethical" and "incompetent." Another tenant testified that Fernandez made statements to him that Marcus was "dishonest, that he didn't have any integrity, he couldn't understand why we would do business with such a person."
Horizon also filed two complaints with the Florida Bar, asserting that Marcus was engaged in the unauthorized practice of law. The bar dismissed the complaints a year later.
After initially filing an action for libel and tortious interference, Horizon voluntarily dismissed its complaint, but not before LRX and Marcus counterclaimed for slander (based on the oral statements made by Fernandez), libel (based on the letter and bar complaint), and tortious interference with business relationships.
The jury verdict, finding that Horizon had libeled, slandered, and tortiously interfered with LRX and Marcus, was for $2,925,000.00 in compensatory damages and punitive damages in the amount of $3,437,500.00. Horizon's subsequent motion for judgment notwithstanding the verdict, however, was granted as to libel, count II, and a new trial was granted as to counts I and III, for slander and tortious interference.
As to the libel claim, the court concluded that the comments in the letter constituted a statement of opinion. The court also held that the libel count could not stand on the ground that Horizon had falsely accused LRX and Marcus of a crime, where the crime, a misdemeanor, could not be deemed an "infamous crime." As to the slander and tortious interference claims, the court held that because the libel count "so permeated and infected the other two Counts," the interests of justice necessitate a new trial as to those counts. The trial court also stated additional grounds, concluding that the jury's verdict was against the manifest weight of the evidence, that evidence of Horizon's filing a grievance with the Florida Bar was privileged and should not have been presented to the jury, that certain testimony concerning lost profits should have been stricken, and that the jury's verdict was excessive.
We reverse the judgment notwithstanding the verdict. "A motion for directed verdict should be granted only when the evidence, viewed in the light most favorable to the non-moving party, shows that a jury could not reasonably differ as to the existence of a material fact, and the movant is entitled to a judgment *885 as a matter of law." Lester's Diner II, Inc. v. Gilliam, 788 So.2d 283, 285 (Fla. 4th DCA 2000). We cannot agree that the letter charging Plaintiffs with the unauthorized practice of law was, as a matter of law, "pure opinion." There are issues of fact as to whether the letter was based on false statements of fact and whether it implied knowledge of undisclosed facts.
Generally, an action for libel will lie for "a false and unprivileged publication by letter, or otherwise, which exposes a person to distrust, hatred, contempt, ridicule or obloquy or which causes such person to be avoided, or which has a tendency to injure such person in his office, occupation, business or employment.'" Thomas v. Jacksonville Television, Inc., 699 So.2d 800, 803 (Fla. 1st DCA 1997) (citations omitted). In other words, such a communication is "defamatory" if it tends to harm the reputation of another as to lower him or her in estimation of community or deter third persons from associating or dealing with the defamed party. Mile Marker v. Petersen Publ'g, L.L.C., 811 So.2d 841, 845 (Fla. 4th DCA 2002).
The trial court viewed the letter's statements as pure opinion. Statements of pure opinion are not actionable under the First Amendment. Morse v. Ripken, 707 So.2d 921, 922 (Fla. 4th DCA 1998). The law draws a distinction, however, between pure expressions of opinion, which are constitutionally protected, and mixed expressions of opinion, which are not. Mixed opinion is based upon facts regarding a person or his conduct that are neither stated in the publication nor assumed to exist by a party exposed to the communication. Rather, the communicator implies that a concealed or undisclosed set of defamatory facts would confirm his opinion. Id.
The Supreme Court recognized that "[e]ven if the speaker states the facts upon which he bases his opinion, if those facts are either incorrect or incomplete, or if his assessment of them is erroneous, the statement may still imply a false assertion of fact. Simply couching such statements in terms of opinion does not dispel these implications." Milkovich v. Lorain Journal Co., 497 U.S. 1, 18-19, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990); see also Anson v. Paxson Communications Corp., 736 So.2d 1209 (Fla. 4th DCA 1999)(holding that false remarks on a radio talk show were not automatically shielded from liability merely because they were opinions). One looks to the totality of the statement, the context in which it was published, and the words used to determine whether the statement is pure or mixed opinion. Hoch v. Rissman, Weisberg, Barrett, 742 So.2d 451, 460 (Fla. 5th DCA 1999).
The Horizon letter, as a matter of law, was not pure opinion, where it contains false assertions of fact. The letter included the following, in reference to an earlier LRX audit report which was not attached to, and did not accompany, the letter:
7. The following conduct on your and LRX's part constitutes the unauthorized practice of law:
expressly prohibiting Nelson Fernandez as landlord from communicating with his own tenants, under the guise that these tenants are now your "clients." As you well know, even if this were in litigation, the parties themselves are permitted to communicate directly; it is only counsel that is prohibited from communicating with an opposing party;
purporting to apply legal principles to particular fact situations, and giving legal advice regarding lease "disputes" and the "settlement" thereof, for a fee; and

*886 demanding (within 30 days) the "production" by Horizon of voluminous documentation and information, as if your demand letter were a request for production under Rule 1.350, Fla. R. Civ. P.
There is support for LRX's claim that the three asserted factual bases for the accusation were false and that the letter implies knowledge of facts going beyond mere opinion. If the jury were to conclude that any of the characterizations in the letter were false, it would allow the jury to disregard the pure opinion defense.
As to the first claim, the fact-finder could conclude that the charge that LRX had prohibited the landlord from communicating with his tenants was a false statement of fact. The record reflects that the LRX lease audit report, on its face, does not expressly prohibit the landlord from communicating with the tenants. Rather, the reference is to a provision in which LRX stated that its clients "have authorized us to act on their behalf," and requests that all communications "concerning the contents of this report" be directed to LRX so that an "agreeable resolution of this matter might be achieved."
As to the second claim, the fact-finder could also conclude that the charge in the Horizon letter that Marcus, by the lease audit report, gave "legal advice regarding lease `disputes' and the `settlement' thereof, for a fee," is a false statement of fact. The audit report states in one place that it was based on review "by our attorneys," and in another upon "the advice of our legal counsel," with no proof that Marcus was that counsel. It is LRX and Marcus' position that by this, Horizon implied that it knows that LRX did not, in fact, have other lawyers handling the legal issues and that Marcus was acting in the capacity of attorney. No facts supporting such an implication are disclosed in the letter or supported by the evidence.
The jury could also conclude that the report does not, as claimed, give legal advice to clients, as it was directed by the tenants' agent to a non-client, the landlord, and, if the letter implies other legal advice, it is silent as to any underlying fact. Therefore, on the evidence presented, the jury could conclude that the implication of underlying facts was untrue, incomplete, or both.
The third claim also contained a false statement of fact. The audit report did not demand, as claimed in the letter, that the requested documents must be produced by the landlord within thirty days. The report requested that documents be supplied, but no time limit was given. The only reference to a thirty day period had nothing to do with supplying documents, but simply expressed the "hope that this matter can be amicably resolved within thirty (30) days." Therefore, a jury could conclude that this was an expression, in the Horizon letter, of inaccurate facts.
We have considered Stembridge v. Mintz, 652 So.2d 444 (Fla. 3d DCA 1995), and find it distinguishable. There, all of the underlying facts were accurately disclosed, whereas here, the underlying "facts" could be found to constitute material misstatements.
In addition to the statements accusing Marcus of unauthorized practice of law, a further implication that a jury may draw from the letter is that Marcus is a loathsome, dishonest character who cannot be trusted by clients; therefore, even if the foregoing statements in the letter were taken as true, there remains a genuine issue as to Horizon's motives. Under Florida law, truth "is only a defense to defamation when the truth has been coupled with good motive." Lipsig v. Ramlawi, 760 So.2d 170, 183 (Fla. 3d DCA *887 2000); see also Boyles v. Mid-Florida Television Corp., 431 So.2d 627 (Fla. 5th DCA 1983)(news reports concerning plaintiff's past conduct, including reprimands for taunting retarded patients and a prior investigation regarding another crime, timed to be broadcast within stories about another incident, the death of a retarded child, were actionable).
A jury could conclude that Horizon's purpose was to destroy the tenants' trust in Marcus, to Horizon's financial advantage, by telling the LRX clients that Marcus' past actions demonstrate traits of criminality and deceitfulness, and that Marcus was engaging in criminal acts in representing the clients. In expressing this, Horizon omitted any reference to favorable facts which could refute the impression of dishonesty, and which caused the supreme court to limit the penalty to a suspension. There is reference to cocaine addiction, for example, but it overlooks the steps taken to recover, including a referee's finding that Marcus "has established a [rapport] and strong affiliation with Narcotics Anonymous Program over the last three years and continues this affiliation on a bi-weekly basis," that he "successfully fulfilled a two-year contract with the Florida Lawyers Assistance Corporation and voluntarily continues to report to his assigned monitor," and that he "has shown an active and helpful role in the recovery of other suffering addicts." See Marcus, 616 So.2d at 976-77. It also failed to note that the term of his suspension period was expired and he was eligible to seek reinstatement to the bar.
Although Horizon claims the letter is truthful, the claim of truth does not assure Horizon of the shield of the defense where there was also evidence of improper motive sufficient to warrant a jury finding of defamation and to preclude a directed verdict.
We disagree with Horizon's argument that because it was not pled, the alternate theory of libel could not serve as a basis for liability, where the record shows that it was tried by consent. "When issues not raised by the pleadings are tried by the express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Fla. R. Civ. P. 1.190(b). An issue is tried by consent when there is no objection to the introduction of evidence on that issue. See Ferayorni v. Hyundai Motor Co., 711 So.2d 1167 (Fla. 4th DCA 1998). Here, there were no objections made to the introduction of the relevant evidence and, thus, liability on the basis that Horizon's statements were coupled with improper motive was tried by consent.
Therefore, as to count II, libel, we reverse the judgment notwithstanding the verdict and remand to reinstate the verdict. As to the other counts, we remand for further consideration of Horizon's motion for new trial. Although the trial court listed several reasons for granting the new trial, its order stressed the fact that a new trial was necessary because the libel count "so permeated and infected" the other counts. In light of our decision reversing the JNOV on the libel count, we remand so that the trial court can further evaluate those other reasons for granting the new trial on the slander and tortious interference claims. As to the other issues raised on direct and cross-appeal, we find no reversible error or abuse of discretion and affirm. See Castlewood Int'l Corp. v. La Fleur, 322 So.2d 520 (Fla.1975)(recognizing a stronger showing of abuse of discretion is required to overturn an order granting a new trial then is required to overturn an order denying a new trial); State Farm Fire and Cas. Co. v. Higgins, 788 So.2d *888 992 (Fla. 4th DCA 2001), rev. granted, 794 So.2d 604 (Fla.2001).
MAY, J., and JACOBUS, BRUCE W., Associate Judge, concur.